

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
United States of America

T: +1 212 506 2500
F: +1 212 262 1910

mayerbrown.com

**Jordan Sagalowsky**
Partner
T: +1 212 506 2165
F: +1 212 262 1910
JSagalowsky@mayerbrown.com

June 15, 2022

**BY ECF**

The Hon. Analisa Torres, U.S.D.J.
United States Courthouse
500 Pearl Street
Courtroom 15D
New York, NY 10007-1312

Re:     IRA Financial Trust Co. v. Gemini Trust Company, LLC, No. 1:22-cv-
04672 (S.D.N.Y.)
Pre-Motion letter on proposed motion to compel arbitration

Dear Judge Torres:

We represent Defendant Gemini Trust Company, LLC in this action. Pursuant to Rule III.B. of Your Honor's Individual Practices in Civil Cases, Gemini requests a pre-motion conference to seek leave to move, under the Federal Arbitration Act ("FAA") for an order (i) compelling arbitration of the claims brought by Plaintiff IRA Financial Trust Company ("IRAF"), and (ii) staying the litigation pending the outcome of arbitration.[1]

IRAF's claims are groundless, but, in any event, this dispute does not belong in this Court. Indeed, the same contract that requires arbitration of this case—a contract that IRAF's Complaint fails to disclose in *any* of its 167 paragraphs—demonstrates that IRAF's claims against Gemini are meritless. But, rather than honoring the parties' agreement to arbitrate, IRAF instead has burdened this Court with inflammatory allegations that wrongfully disparage Gemini and its principals. IRAF's improper conduct in filing the Complaint in breach of its contractual obligations serves only to highlight the need for this Court to require IRAF to resolve this commercial dispute in arbitration.

**Background**

IRAF and Gemini are two sophisticated commercial parties. IRAF is a trust company that provides customers with investment options for their individual retirement accounts, including the

---

[1] Gemini understands that Your Honor's individual rules exempt *petitions* to compel arbitration from the pre-motion letter requirements of Individual Rule III.B. In an abundance of caution, however, Gemini is filing this pre-motion letter to ensure compliance with Your Honor's rules for civil motion practice. If Your Honor prefers, Gemini is prepared to proceed directly to filing a motion to compel arbitration and stay proceedings.

ability to invest in cryptocurrency (such as Bitcoin). Gemini provides, among other things, an online platform for buying, selling, transferring, and storing certain cryptocurrencies. In 2019, IRAF created an account on Gemini's platform to offer its customers cryptocurrency investment options.

IRAF's relationship to Gemini arises out of, and is governed by, a contract between the parties. In order to create its account with Gemini, IRAF representatives visited Gemini's account registration page and affirmatively agreed—by actively checking a box noting its assent—that "[b]y creating this account [IRAF] agree[s] to [Gemini's] User Agreement and Privacy Policy" with the underlined phrases hyperlinking to the full text of those documents on Gemini's website. By accepting the terms of the User Agreement, IRAF also "agree[d] to enter into th[e] API agreement . . . and be legally bound by its terms and conditions[.]"

As Gemini's motion will show, the User Agreement requires arbitration of all of IRAF's claims. Moreover, as summarized below, IRAF's spurious allegations in this lawsuit cannot be reconciled with the express terms of the User Agreement and incorporated API Agreement (attached as Exhibits A and B, respectively).

IRAF's claims arise out of a February 8, 2022 security incident that impacted IRAF's systems after IRAF's personnel negligently or recklessly managed their system. They failed to observe best practices to secure their systems and credentials, detect malicious activity on their systems, or appropriately respond to such malicious activity once identified. Their weak controls and processes allowed two of their employees to be manipulated into facilitating the theft. Although IRAF was best positioned to quickly stop the theft of funds, it did not. Instead, it now complains that Gemini did not act quickly enough to take action that it could have taken itself immediately. IRAF itself has claimed in a public filing in another action that the incident occurred after "the hackers initially engaged in a phishing attack consisting of phone calls to IRA clients" followed by "swatting" techniques to distract IRAF employees and law enforcement officials. *See Griffin, et al. v. Gemini Trust Co., LLC and IRA Financial Tr. Co.*, No. 3:22-cv-01747-CRB (N.D. Cal.), Doc. 24, at 8-9. As IRAF further contends, "[w]hile IRA employees were distracted by the police," during a false notice of an alleged kidnapping at IRAF headquarters, "cybercriminals withdrew cryptocurrency from several IRA accounts on the Gemini exchange." *Id.* Thus, IRAF itself has told another federal court that the incident specifically and successfully targeted IRAF's security credentials and its own employees.

As a result of the security failure at IRAF, that company is facing substantial claims from its customers for their losses. As reflected in the Complaint, IRAF's only response for its failure to secure its own systems and employees is to try to blame Gemini. This is baseless: Not only is IRAF responsible for these losses, but, under its agreement with Gemini, its claims are meritless and are asserted in the wrong forum. Specifically, in the User Agreement, IRAF expressly disclaimed Gemini's liability, agreed to indemnify Gemini, and agreed to arbitrate all claims it has against Gemini.[2]

Stripped of its hyperbole and *ad hominem* attacks on Gemini's principals, the Complaint alleges, in sum and substance, that when IRAF entered into its contractual relationship with

---

[2]    The Complaint pleads claims against Gemini sounding in (i) fraud (ii) negligence (iii) gross negligence (iv) violation of New York GBL § 349 (v) contribution (vi) defamation (vii) tortious interference with contract and also purports to demand attorneys' fees.

Gemini, Gemini somehow embellished the strength of its security protocols and misstated the nature of Gemini's API (or, Application Programming Interface). *See generally* Compl. ¶¶ 1-17; 41-54. The Complaint also alleges that Gemini's response to mitigate the impact of IRAF's systems breach somehow was deficient and untimely because Gemini failed to provide a telephone contact number and required too much time to respond to emails from IRAF. *See id.* ¶ 18. IRAF also purports to base a defamation claim on an email sent by Gemini to certain individuals setting forth the factual circumstances of the security failure and explaining why IRAF's contractual arrangement with Gemini requires IRAF to bear responsibility for affected individuals' losses. *See id.* ¶¶ 116-120. All of these allegations arise out of—and ultimately will be resolved under—the terms of the parties' agreements.

For example, IRAF specifically agreed that it, and not Gemini, would be "*solely responsible* . . . for managing and maintaining the security of [IRAF's] User Account login credentials and any other required forms of authentication, including [its] API keys." Exhibit B at 6 (emphasis added). IRAF "further agree[d] … that, [Gemini is] not responsible (and [IRAF] will not hold [Gemini] responsible) for any unauthorized access to or use of [IRAF's] User Account and/or [its] [Gemini] Account." *Id.* Thus, IRAF's baseless allegations as to the integrity of Gemini's API-related security measures—as well as IRAF's related, broad-brush attacks on Gemini's industry-leading security protocols—are false and legally foreclosed by the parties' agreements. Similarly, with respect to the allegation that Gemini somehow wronged IRAF by failing to provide an emergency contact phone number, IRAF fails to disclose that it agreed in the User Agreement that "all communication . . . will be via email" including specifically communications concerning "unauthorized or suspicious activity in your account[.]" Exhibit A at 10.

### IRAF's Binding Commitment to Arbitrate

To be sure, the merits of IRAF's claims are not properly before this Court, because IRAF must arbitrate its claims against Gemini for two independent reasons.

*First*, there can be no legitimate dispute over whether IRAF is required to arbitrate its claims. In accepting the User Agreement, IRAF agreed that the parties must arbitrate "any controversy, claim, or dispute *arising out of or relating to* this User Agreement or the breach thereof." Exhibit A at 62 (emphasis added). IRAF's claims fall directly within the scope of this broad arbitration clause. As courts applying Second Circuit precedent have held, the User Agreement provides a "classic example of a broad arbitration clause." *Great Lengths Universal Hair Extensions S.r.L. v. Gold*, 2017 WL 1731184, at *5 (S.D.N.Y. Mar. 29, 2017) (holding that the provision that "all claims and disputes arising under or relating to this agreement . . . shall be settled by binding arbitration" comprises "the classic example of a broad arbitration clause") (citing *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)).

Where, as here, "the arbitration clause is broad, there arises a presumption of arbitrability," and arbitration of even a collateral matter will be ordered if "the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (internal quotation marks omitted) (quoting *Collins*, 58 F.3d at 23). In fact, even if "the scope of the arbitration agreement is ambiguous," which it is not in this case, "any doubt should be resolved in favor of arbitration." *Id.* at *3 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418-19 (2019). Thus, "arbitration must not be denied unless a court is positive that the clause it is examining does not cover the

asserted dispute." *Great Lengths*, 2017 WL 1731184, at \*3 (quoting *Spear, Leeds & Kellogg v. Cent. Life Assur. Co., et al.*, 85 F.3d 21, 28 (2d Cir. 1996)).[3]

*Second,* to the extent that IRAF disputes its duty to arbitrate, IRAF "expressly agree[d] that any dispute about the scope of this User Agreement to arbitrate and/or the arbitrability of any particular dispute shall be resolved in arbitration." Exhibit A at 62. This contractual provision aligns with JAMS Rule 11, which likewise provides that the arbitrator shall have the authority to determine jurisdiction and arbitrability issues. When parties agree to delegate disputes about arbitrability, courts must enforce those delegation agreements. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 528 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.")

When, as here, an enforceable arbitration provision covers the plaintiff's claims, Section 3 of the FAA requires a district court to compel arbitration and stay the lawsuit. *See* 9 U.S.C. § 3 (providing for a stay of court proceedings pending the resolution of arbitration). The Second Circuit has made clear that a stay is mandatory under Section 3 when requested by a party. *Katz v. Cellco P'Ship*, 794 F.3d 341, 345-47 (2d Cir. 2015). In this case, the statutory stay will relieve the Court of further burden in administering this case, as well as serving the salutary purpose of prohibiting IRAF's further misuse of the Court's docket.

We thank the Court for its attention to this matter and look forward to addressing the requested motion pursuant to Your Honor's direction.

Respectfully submitted,

*/s/Jordan Sagalowsky*
Jordan Sagalowsky


Cc:    Counsel of Record via ECF
       Jack Baughman (jbaughman@jfblegal.com)
       Archis Parasharami (aparasharami@mayerbrown.com)
       Gina Parlovecchio (gparlovecchio@mayerbrown.com)

---

[3]   *See also Convergen Energy v. Brooks*, 2020 WL 5549039, at \*15 (S.D.N.Y. Sept. 16, 2020) ("When parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated.") (internal quotation marks omitted) (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224-25 (2d Cir. 2001)).